IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARRIE FOUSER,

       Plaintiff,

vs.                                                  No. CIV 08-0905 JH/DJS

PFIZER, INC.,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the following motions: (1) Plaintiff's Motion to Compel **[Doc. No. 6]**, filed on October 10, 2008; (2) Plaintiff's Motion to Exceed Page Limit **[Doc. No. 5]**, filed on October 10, 2008; (3) Defendant's Motion to Strike Plaintiff's Motion to Compel **[Doc. No. 11]**, filed on November 5, 2008; and Plaintiff's Second Motion to Exceed Page Limit **[Doc. No. 23]**, filed on December 11, 2008.[1]  Plaintiff's Motion to Compel moves the Court for an order compelling Defendant to fully respond to Plaintiff's first set of interrogatories and requests for production.

As a preliminary matter, the Court will address Plaintiff's objections to Defendant's Privilege Log.  *See* Pl.'s Mot. to Compel; Ex. 1.  Defendant also provided a "supplemental" Privilege Log.  *See* Pl.'s Reply; Ex. 2.  Defendant's Supplemental Privilege Log does not comply with Rule 26(b)(5)(A)(ii).  Rule 26(b)(5)(A)(ii) requires a party withholding information that is otherwise discoverable by claiming the information is privileged to "describe the nature of the

---

[1] Plaintiff's Motion to Exceed Page Limit [Doc. No. 5] and Plaintiff's Second Motion to Exceed Page Limit [Doc. No. 23] are granted.

documents, communications, or tangible things not produced or disclosed– and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege. *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 651 ( D.N.M. July 6, 2007).

In this case, Defendant's Supplemental Privilege Log is not sufficiently detailed to allow Plaintiff or the Court to ascertain whether the privilege applies to the documents Defendant seeks to protect. Defendant must list <u>each</u> withheld document, describe the nature of the document, its author, date of creation, and to whom the document was distributed. Defendant must also indicate what privilege it is invoking for each document. If Plaintiff fails to amend its Supplemental Privilege Log to comply with Rule 26, the Court will deem the privilege waived.

Second, according to Plaintiff, she provided Defendant with a proposed Stipulated Confidentiality Order, but Defendant failed to respond to Plaintiff's inquiries regarding the adequacy of the order. In its response, Defendant agreed that the parties will need to discuss entering into an Agreed Protective Order. A confidentiality order/protective order would protect confidential or proprietary information. Accordingly, no later than ten (10) days from the date of the entry of this Memorandum Opinion and Order, the parties should submit a Stipulated Protective Order for the Court's review.

## I.  Discussion

Discovery plays an important role in our adversarial system: full development of the facts surrounding a matter furthers "the purpose discovery is intended to serve– advancing the quest for truth." *Taylor v. Illinois,* 484 U.S. 400, 430 (1988). Under Rule 26(b)(1) of the Federal

Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." FED.R.CIV.P. 26(b)(1). The Rule's relevancy requirement is to be construed broadly, and material is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved in the litigation. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978).

Nonetheless, even if the requested matters are relevant, discovery will not be allowed "where no need is shown, or compliance would be unduly burdensome, . . . ." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1323 (Fed.Cir. 1990); *see also Smith v. Pfizer*, No. Civ. A. 98-4156-CM, 2000 WL 1679483, *2 (D.Kan. Oct. 26, 2000). In determining the scope of discovery, the court "must weigh the factors . . . so as not to 'deprive a party of the fair opportunity to develop and prepare a case.'" *Smith,* 2000 WL 1679483, *2.

Since the filing of Plaintiff's motion, the parties have conferred, and Defendant has supplemented its discovery responses and produced additional records. Pl.'s Reply at 1. Accordingly, the parties resolved some of their disputes.

**A.  Interrogatories**

**1.  Interrogatories  Nos. 1 & 2**

Interrogatory No. 1 is no longer in dispute.  Interrogatory No. 2. requests the identity of each New Mexico sales representative employed by Pfizer between January 1, 2000 and the date of trial, and for each person requests the following information:

(a)  name

(b)  current address and telephone number;

(c)  date of hire;

(d)  region/area assigned;

(e)  division/drug type/drug group;

(f)  position

(g)  immediate supervisor

(h)  sex/gender

(i)  whether the individual ever requested maternity leave during their employment with Pfizer;

(j)  whether the individual complained of discrimination, sexual harassment, or a hostile work environment while employed at Pfizer;

(k)  whether the individual complained of discrimination, sexual harassment, or a hostile work environment while employed at Pfizer;

(l)  date of termination; and

(m)  reason for termination.

Defendant initially objected on the basis of relevancy and because the interrogatory was overly broad.  Defendant contends Plaintiff's Interrogatory No. 2 seeks information from "every single pharmaceutical representative regardless of their district, position, territory, supervisor, or drug marketed;" information that is "irrelevant" and "overly broad."  Def.'s Resp. at 6.  Defendant also contends Plaintiff should not be allowed to request discovery for a period of 9 years when she only worked for Defendant for less than 5 years.  *Id.*  Nonetheless, Defendant supplemented its response and identified eight employees who worked as sales representatives in the Albuquerque District, Parke Davis Division, under Shane Cleveland during 2002-2005.  Defendant's supplemental response reflected its belief that the scope of Plaintiff's request was

4

overly broad because Plaintiff's interrogatory did not seek information regarding similarly situated employees. Accordingly, Defendant provided the names of only those employees it determined were "similarly situated employees."

In opposing discovery on the grounds of over-breadth, a party has the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. "This imposes an obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested documents." *Super Film of Am., Inc. v. UCB Films, Inc*., 219 F.R.D. 649, 651 (D.Kan. 2004). Thus, an objecting party cannot sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing. *See, St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.,* 198 F.R.D. 508, 513 (N.D. Iowa 2000).

Defendant failed to meet its burden. Defendant's objection is simply a "boilerplate" claim that the requested discovery is burdensome. Nonetheless, Defendant is correct that Plaintiff seeks information regarding employees that are not "similarly situated." "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co*., 112 F.3d 1398, 1404 (10th Cir.1997). In determining whether two employees are similarly situated, a "court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *Id*.

In this case, Shane Cleveland, Plaintiff's supervisor and the district manager, was fired on May 2, 2005. Pl.'s Reply; Ex. 4. And, in May 2005, Plaintiff "was advised that as a result of a future reorganization of the entire sales force, she would be displaced from her position effective

September 1, 2005.[2]" *Id.* In June 2005, Plaintiff also "was informed that her ranking <u>within her region</u> caused her to be displaced from her position." *Id.* (emphasis added). Nevertheless, Plaintiff contends she is similarly situated with "all New Mexico Pfizer sales representatives – not just those in Albuquerque, not just those in Pfizer's Parke-Davis Division, and not just those under Shane Cleveland– because *inter alia*, at the time she was notified that she had been selected for termination, plaintiff was supervised by regional manager Chris Thompson . . . ." Pl.'s Reply at 9.

Applying the standard set forth in *Aramburu*, the Court finds that employees outside Plaintiff's region are not similarly situated. Defendant shall produce the names of New Mexico sales representatives employed in Plaintiff's region and supervised by Mr. Cleveland and Mr. Thompson from 2000 to 2005.

### 2. Interrogatories Nos. 4 & 5

Interrogatory No. 4 is no longer in dispute. Interrogatory No. 5. requests the following:

> Please provide the name, title, address and telephone number of each Pfizer employee or agent who participated in any way in the selection of any New Mexico sales representative for Pfizer's 2005 reduction in force (a.k.a. "Field Force Optimization"). This includes those individuals who evaluated, ranked and selected existing Pfizer employees for termination or placement. For each such person describe in detail such individual's involvement in the RIF, including the names of the sales representatives the individual selected for the RIF, and why. This interrogatory specifically seeks the names of the individuals who decided that plaintiff should be terminated as part of RIF, when that decision was made, and why.

Defendant objected to this interrogatory on the grounds that it was overly broad, irrelevant, and vague. Defendant also objected that Plaintiff was seeking "information on a statewide basis

---

[2] Although Plaintiff was advised that she would not have a position with Pfizer effective September 1, 2005, on August 8, 2005, she was "given a placement and continued her employment." Pl.'s Reply; Ex. 4.

6

without any regard to whether the "similarly situated" test [was] passed . . . ." Def.'s Resp. at 7. Defendant's further argues that because Plaintiff was not terminated it cannot identify "who fired her and why." *Id.* at 8. Defendant supplemented its response and identified Julie Jennings as "the person most knowledgeable regarding how New Mexico PHR's were placed during the FFO (Field Force Optimization)." Pl.'s Reply at 6.

Although Defendant contends Plaintiff was not terminated during the FFO and was subsequently "placed prior to any layoff occurring," nonetheless, Defendant should provide the requested information of the individual(s) who initially determined Plaintiff would not be placed, when that determination was made and why. Defendant should also provide the requested information as to those "individuals who evaluated, ranked and selected **existing** Pfizer employees for termination or placement" but only as to existing employees within Plaintiff's region.

### 3. Interrogatories Nos. 6 & 7

Interrogatory No. 7 is no longer in dispute. Interrogatory No. 6 requests the following information:

> Please describe the details surrounding Pfizer's termination of Shane Cleveland's employment, including:
>
> a.   who made the decision to terminate Cleveland;
> b.   when the decision to terminate Cleveland was made, and when he was in fact terminated;
> c.   Pfizer's stated reason for terminating Cleveland;
> d.   whether Cleveland's termination was related to plaintiff's complaint;
> e.   whether Cleveland's termination was related to complaints by other Pfizer employees; and
> f.   whether other investigations of Cleveland's conduct occurred.

Plaintiff contends Defendant has supplemented its response but failed to identify who made the decision to terminate Mr. Cleveland.  Defendant shall provide the name(s) of the individual(s) who made the decision to terminate Mr. Cleveland.

### 4.  Interrogatories Nos. 8 & 9

Interrogatory No. 8 requests the following information:

Describe in detail any severance package(s) that Pfizer offered to any New Mexico Pfizer sales representative in connection with Pfizer's 2005 RIF/Field Force Optimization.  This includes, but is not limited to, describing the compensation offered, how an employee's proposed severance was calculated, any conditions for obtaining severance.  This also requires that Pfizer identify each and every New Mexico Pfizer sales representatives that Pfizer discussed severance with, when they discussed it, and whether the sales representative accepted severance.

Defendant supplemented its response stating, "all New Mexico employees in the same candidate pool as Plaintiff were placed" and "none received severance."  Pl.'s Reply at 13. Plaintiff argues this "candidate pool" is too limited and should apply to "all New Mexico drug representatives."  *Id.*  Defendant's response is adequate since it covers "similarly situated" employees.

Interrogatory No. 9 requests the following:

Please describe each and every meeting or phone call or other communication any Pfizer agent had with plaintiff regarding her complaint against Shane Cleveland, including identifying:

   a. the date and time of the meeting, phone call, or other communication;
   b. the length of the meeting, phone call, or other communication;
   c. how the meeting, phone call or other communication terminated;
   d. who was at the meeting, or participated in phone call, or otherwise was involved in the other communication;
   e. the substance of the discussion or communication;

>Please identify any notes, diaries, calendars, records, audio or video tapes, or other documents or records, including electronically stored records, which concern, refer, or relate to any meetings, phone calls, or other communications identified above.

Defendant objected to this interrogatory on the grounds of attorney-client/work product privileges and because it was unduly burdensome. Defendant failed to carry its burden of showing facts justifying their objection that Interrogatory No. 9 is unduly burdensome. Accordingly, Defendant shall provide non-privileged information responsive to Interrogatory No. 9.

### 5. Interrogatories Nos. 10 & 14

Interrogatory No. 10 is no longer in dispute. Interrogatory No. 14 requests the following:

>Identify every legal proceeding, lawsuit, administrative proceedings, arbitration or mediation during the period of January 1, 2003 through the date of trial in which it has been alleged that:
>
>   a.   Pfizer discriminated against an employee on the basis of sex;
>   b.   Pfizer discriminated against an employee on the basis of pregnancy;
>   c.   A Pfizer supervisor sexually harassed his/her subordinate;
>   d.   A Pfizer supervisor created a hostile work environment for his/her subordinate;
>   e.   Pfizer unlawfully retaliated against an employee for complaining about discrimination, sexual harassment, or a hostile work environment;
>
>For each proceeding identified, state: (a) the name of all parties to the proceeding; (b) the date the proceeding was commenced; (c) the name of the court or agency in which it was filed; (d) the case number; (e) the circumstances giving rise to the proceeding; and (f) its resolution or disposition, including the date of resolution and the present status of the proceeding, if it is still pending.

Defendant supplemented its response, stating: "there have been no administrative charges [sic] or lawsuits alleging sex discrimination, pregnancy discrimination, sexual harassment or retaliation for complaints of sex discrimination, pregnancy discrimination or sexual harassment in the Albuquerque/Santa Fe territories in the last three years." Pl.'s Reply at 14.

9

Plaintiff contends Defendant's supplemental response is insufficient because it limits "the geographical area to Albuquerque/Santa Fe" and applies to a shorter time frame, three years instead of five. Plaintiff also contends Defendant's response excluded "complaints of retaliation for alleging discrimination based on age, race, disability or other protected classes, or violations of FMLA, whistleblower protection laws, or other similar statutes." *Id.*

Plaintiff's interrogatory requested information in which Defendant allegedly engaged in retaliatory action against an employee for "complaining about discrimination." Accordingly, Defendant shall supplement its response to include all forms of discrimination. Defendant shall also provide the requested information from 2000 to 2005. However, the Court disagrees with Plaintiff's contention that the scope of its request would include complaints made against Defendant "in any State in Chris Thompson's region during the last five years." *Id.* The Court agrees with Defendant limiting the scope to the Albuquerque/Santa Fe region.

## B.  Requests for Production

Federal Rule of Civil Procedure 34 governs requests for production of documents. Rule 34 requires a written response to a request for production to "state with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts." FED.R.CIV.P. 34(b). Subsection (b) also provides that a party who produces documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." *Id.* Under subsection (a), a party may be required to produce relevant documents and tangible things that are within its

10

"possession, custody or control." FED.R.CIV.P. 34(a). "[C]ontrol comprehends not only possession but also the right, authority, or ability to obtain the documents." *Comeau v. Rupp*, 810 F.Supp. 1127, 1166 (D.Kan. 1992).

### 1. Request for Production Nos. 2 & 3

Request for Production No. 2 requests a complete copy of Mr. Cleveland's personnel file. Defendant supplemented its response. However, Plaintiff is not satisfied Defendant has produced all of Mr. Cleveland's personnel file. If Defendant has not already produced this file, it should do so, except for those documents that relate to compensation or benefits.

Request for Production No. 3 requests Ryan Ashcraft's personnel file. Again, Defendant supplemented its response, but Plaintiff is not satisfied that Defendant has produced all of Mr. Ashcraft's personnel file. If Defendant has not already produced this file, it should do so, except for those documents that relate to compensation or benefits.

### 2. Request for Production Nos. 4, 5, 6 & 7

In Request for Production No. 4, Plaintiff requests "all documents and records, including electronically stored records, which concern, refer, or relate to plaintiff's complaint against Shane Cleveland." Pl.'s Mot. to Compel, Ex. 2. Defendant objected on the grounds that the request sought documents protected by the attorney-client privilege and documents prepared in anticipation of litigation. Nonetheless, Defendant supplemented its response but continued to assert the attorney-client privilege and work product.

The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor." *United States v. Phelan*, 3 Fed.Appx. 716, 718 (10th Cir. 2001). The privilege is

narrowly construed. *Fisher v. United States*, 425 U.S. 391, 403 (1976). A party claiming the attorney-client privilege must prove its applicability. *Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1264 (10th Cir. 1999).

On the other hand, the attorney work-product doctrine "shelters the mental processes of the attorney, providing a privileged area with which he can analyze and prepare his client's case." *In re Qwest Communications Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006)(quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)). "Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances." *Id.* The protection applies to "attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheynne*, 451 F.3d 643, 668 (10th Cir. 2006). "The party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

Citing to *Walker v. County of Contra Costa*, 227 F.R.D. 529 (N.D.Cal. 2005), Plaintiff contends Defendant has waived the attorney-client privilege and the work product doctrine with respect to its investigation of Mr. Cleveland because Defendant has asserted as an affirmative defense that it properly investigated Plaintiff's claims of discrimination and took remedial action.

In *Walker,* plaintiff filed a race discrimination suit against defendants for the failure to promote to the position of Assistant Fire Chief. When plaintiff filed a claim with the California Department of Fair Employment and Housing, the county hired an attorney to investigate plaintiff's allegations and report to in-house counsel on the merits of plaintiff's claim.

Subsequently, the County Board directed the Human Resources Department to prepare a report that was presented to the Board in closed session. Plaintiff moved to compel production of withheld portions of the reports prepared by outside counsel and the Human Resources Department. The *Walker* court held that the attorney client privilege and work product protections are waived when an employee asserts the *Faragher/Ellerth* affirmative defense. The Court explained:

> If Defendants assert as an affirmative defense the adequacy of their pre-litigation investigations into Walker's claims of discrimination, then they waive the attorney-client privilege and the work product doctrine with respect to documents reflecting that investigation. Where a party puts the adequacy of its pre-litigation investigation into issue by asserting the investigation as a defense, the party must turn over documents related to that investigation, even if they would ordinarily be privileged.

*Walker*, 227 F.R.D. at 535. However, the *Walker* court also stated:

> [Defendants] pled as their twelfth affirmative defense that Plaintiff's claims are barred because CCCFPD took and had taken reasonable steps to prevent and promptly correct any discrimination and/or harassment in the workplace, and plaintiff unreasonably failed to take advantage of the preventative and corrective opportunities provided by the CCCFPD or avoid harm otherwise.
>
> This language indicates that Defendants intend to rely on Ms. Tripoli's investigation as a defense in this action. For that reason Defendants must turnover Ms. Tripoli's report as it pertains to the pre-litigation investigation into Walker's claim of discrimination.
>
> However, Ms. Tripoli's legal analysis of the adequacy of Defendants' investigation does not fall within the scope of the Defendant's waiver. Defendants' pre-litigation investigation is relevant to their affirmative defense, but the attorney's intra-litigation investigation is not. Their affirmative defense says nothing about any intra-litigation investigation, only the pre-litigation investigation. Consequently, there is no waiver of the work product doctrine with respect to Tripoli's Findings and Conclusions at the end of the report. These findings are in fact the most protected form of work product: the attorney's legal analysis and opinions. They may reflect her advice to Defendants within this litigation and are therefore shielded from discovery.

*Id.* In this case, Defendant's Answer to Plaintiff's Complaint asserted, *inter alia*, the following affirmative defenses:

> (10) Plaintiff's claims for discrimination and harassment are barred and/or any recovery of damages is precluded because Defendant exercised reasonable care to prevent and promptly correct any alleged discrimination and/or harassment; and
>
> (11) For further answer herein, if necessary, Defendant[] affirmatively assert[s] that Plaintiff's claims for discrimination and/or harassment are barred and/or recovery of damages is precluded because Plaintiff unreasonably failed to take advantage of Defendant's preventive or corrective opportunities to avoid harm otherwise.

Pl.'s Mot. to Compel; Ex. 12.   Accordingly, Defendant must produce any pre-litigation documents relating to the investigation of Plaintiff's complaint against Mr. Cleveland. However, if the investigative report contains opinion work product, Defendant is not required to produce that portion of the report.

> Request for Production No. 5 requests the following:
>
> Produce all documents and records, including electronically stored records, which concern, refer, or relate to Pfizer's decision to terminate Shane Cleveland. This includes, but is not limited to any records which concern, refer, or relate to communications or meetings between plaintiff and any representative of Pfizer during or after Pfizer's investigation. This specifically includes Pfizer's letter of termination to Shane Cleveland and any response from Cleveland.

Pl.'s Mot. to Compel; Ex. 3.

Defendant objected on the grounds of attorney-client/work product privileges. Nonetheless, Defendant supplemented its response and provided the reason it terminated Mr. Cleveland and provided its letter of termination.  Thus, Defendant has fully responded to Request for Production No. 5.  Additionally, Defendant has fully responded to Requests for Production Nos. 6 & 7.

### 3.  Request for Production Nos. 8 & 9

14

Request for Production No. 8 directs Defendant to "produce all documents and records, including electronically stored records, which concern, refer, or relate to any complaint by any other Pfizer employee relating to Chris Thompson." Pl.'s Mot. to Compel; Ex. 3.

Defendant responded "no employee has complained that Mr. Thompson discriminated against them based on pregnancy." Def.'s Resp. at 15. Nonetheless, Plaintiff contends Defendant limited its response to discrimination based on sex and pregnancy and should have responded to any complaints against Mr. Thompson on any bases.

Defendant shall fully respond if, in fact, there were any complaints against Mr. Thompson on other grounds other than sex or pregnancy discrimination.

### 4. Request for Production Nos. 12, 13, 15, 16 & 17

Request for Production No. 12 requests "copies of each and every request by any New Mexico sales representatives for maternity or FMLA leave from January 1, 2000 to the date of trial." Pl.'s Mot. to Compel; Ex. 3. Plaintiff contends Defendant can redact the personal or medical basis for the leave request to protect Pfizer employees.

Defendant shall produce the requested documents from 2000 to 2005, subject to a confidentiality order.

Request for Production Nos. 13, 15 and 16 are no longer in dispute if Defendant's amended Privilege Log complies with Rule 26. Request for Production No. 17 directs Defendant to "produce all documents and records, including electronically stored records, which concern, refer, or relate to reasons that Pfizer underwent a 'Field Force Optimization' in New Mexico in 2005." Pl.'s Mot. to Compel; Ex. 3.

15

Defendant responded "the FFO was a nationwide restructuring of the sales force and the reasons for it were not specific to New Mexico." Def.'s Resp. at 19. This is responsive to Plaintiff's request. The Court will not compel Defendant to provide its "internal records where Pfizer justifies the need for its FFO," on a national level.

### 5. Request for Production Nos. 18, 19, 21, 22 & 25

Request for Production Nos. 18, 19, 21, 22 and 25 are no longer in dispute if Defendant's amended Privilege Log complies with Rule 26. Request for Production No. 25 directs Defendant to "produce all documents and records, including electronically stored records, which compare the sales of New Mexico Pfizer sales representatives from 2000 through 2005." Pl.'s Mot. to Compel; Ex. 3.

Defendant supplemented its response and produced "Position Candidate Reports." These reports assign a score based on sales. Plaintiff contends that in order to understand the basis for the score, it needs the annual sales numbers for the employees. Plaintiff argues that a review of the raw sales data may reveal differences between employees who otherwise received the same score. In other words, if Mr. Cleveland ranked another employee higher than Plaintiff for placement purpose, yet that employee had lower sales than Plaintiff it would tend to show that Plaintiff was not initially placed during the Field Force Optimization due to Mr. Cleveland's poor evaluation. Defendant shall produce the annual sales number for the employees.

### 6.  Request for Production Nos. 31, 32, 35 & 37

Request for Production Nos. 32 is no longer in dispute.  Request for Production No. 35 directs Defendant to "produce records which reflect the total number of Pfizer employees both terminated and displaced nationwide as part of Pfizer's 2005 "Field Force Optimization."  Pl.'s Mot. to Compel; Ex. 3.

The Court will deny, in part, Plaintiff's motion to compel as to Request for Production No. 35.  Defendant shall produce the requested documents as to employees displaced in Plaintiff's region and supervised by Mr. Cleveland and Mr. Thompson from 2000 to 2005.  *See* Court's ruling, Interrogatory No. 2.

Request for Production No. 37 directs Defendant to "produce all performance evaluations conducted by Shane Cleveland and Rick Shigaki of any Pfizer employee in 2005."  Pl.'s Mot. to Compel; Ex.3.

Defendant supplemented its response and produced Plaintiff's performance evaluations.  However, Defendant objected to producing other documents on the grounds that the request was "overly broad and vague."  Def.'s Resp. at 23.  Because Defendant has not carried its burden of showing the request is overly broad, it shall produce these records.

### C.  Defendant's Motion to Strike

After Plaintiff filed her motion to compel, Defendant filed a motion to strike Plaintiff's motion to compel as "premature and in violation of Rule 26 and the local rules."  Def.'s Mot. to Strike at 4.  Defendant argued Plaintiff had prematurely filed her motion before conferring with Defendant as required under Rule 26(d) and the Court's local rules.  Since the filing of Defendant's motion to strike, the parties have conferred and participated in a Scheduling

Conference on December 18, 2008. The Court entered a Scheduling Order on December 19, 2008. Accordingly, the Court will deny as moot Defendant's motion to strike.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that (1) Plaintiff's Motion to Compel **[Doc. No. 6]**, filed on October 10, 2008, is granted in part and denied in part; (2) Plaintiff's Motion to Exceed Page Limit **[Doc. No. 5]**, filed on October 10, 2008, is granted; (3) Defendant's Motion to Strike Plaintiff's Motion to Compel **[Doc. No. 11]**, filed on November 5, 2008, is denied as moot; and Plaintiff's Second Motion to Exceed Page Limit **[Doc. No. 23]**, filed December 11, 2008, is granted.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**